# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Daniel D. Domenico

Civil Action No. 17-cv-00443-DDD-NYW

JENNIFER M. WEISS,

    Plaintiff,

v.

BANNER HEALTH,

    Defendant.

# ORDER

## I.    INTRODUCTION

This matter is before the Court following the denial of healthcare benefits governed by the Employee Retirement Income Security Act ("ERISA"). Defendant Banner Health is the plan sponsor of the Banner Health Master Health and Welfare Benefit Plan ("the Plan"). Plaintiff Jennifer Weiss was an employee of Banner Health and a participant under the Plan.

Plaintiff submitted a pre-authorization claim for knee surgery involving a procedure known as Autologous Chondrocyte Implantation ("ACI"). Banner Plan Administration ("Banner"), the plan administrator, denied her claim and administrative appeal because the procedure did not meet the Plan's definition of "medically necessary." Upon Ms. Weiss's request, a final external review was conducted and the reviewer upheld the denial of the claim. Ms. Weiss then filed this lawsuit, arguing that Banner wrongfully denied her claim.

Banner previously filed a Motion to Dismiss, asserting that dismissal was warranted because Plaintiff failed to file the case in the United States District of Arizona as required by the forum selection clause in the Plan, and within the one year contractual limitations period provided by the Plan. The Court denied the motion in an Order of December 20, 2017 (Doc. 35).[1] Banner now reasserts these arguments as a basis to deny Plaintiff's claim, but the Court denies them for the same reasons expressed in the December 20, 2017 Order. Nothing in the Administrative Record now before the Court changes that analysis, and Banner has not shown any grounds that justify reconsideration. *See Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

This matter has been fully briefed by the parties. (Docs. 51, 52, 56.) The parties also filed a Joint Motion for Determination (Doc. 57), which is granted consistent with this Order.

## II.  FACTS

Plaintiff worked for Banner as an ICU nurse (Docs. 51, 52, Administrative Record ("R.") at 184-188) and was covered by the Plan. (R. 136, 314, 338.)[2] In 2013, Plaintiff began to experience intractable knee pain with walking, standing, lifting, climbing, and other activities. (R. 138, 144.) She was diagnosed with an

---

[1]  This matter was reassigned to the undersigned upon Judge Daniel's passing. (Doc. 58.)

[2]  The Administrative Record is attached to the Opening Brief and Response Brief.

osteochondral injury, with a "full thickness chondral lesion" of the right knee/patella. (R. 134, 144, 338.)

After the failure of conservative treatment and a surgical procedure (R. 138, 295), Dr. Sides, the Banner-employed orthopedic surgeon who was initially treating Plaintiff, referred her in May 2014 to orthopedic surgeon Dr. Gersoff "to assess the need for . . . ACI." (R. 135-138, 150.) Plaintiff contends that ACI surgery has been recognized for over 20 years in lieu of knee replacement.[3]

On August 7, 2014, Dr. Gersoff, who has extensive experience with ACI, requested that Banner pre-authorize ACI surgery. (R. 143-44, 154-164, 222.) He wrote a supporting letter stating that "[b]ased on my experience, the literature on treating cartilage defects, the nature of the injury and the patient's history, I believe ACI surgery is the *best* treatment option. I feel it is medically necessary. . . ." (R. 158) (emphasis in original.) Dr. Gersoff also stated that there is a "wealth of clinical evidence supporting" ACI, including a recent published article. (*Id*.)

By letter dated August 11, 2014, Banner denied the request for authorization of ACI surgery based upon applicable the Milliman Care Guidelines ("Milliman Guidelines"). (R. 171-72, *see also* 169-70.) While it noted that the request for surgery

---

[3] ACI is a two-step procedure, beginning with the "arthroscopic examination of the chondral lesion followed by harvesting of cartilage from a lesser weight-bearing portion of the knee." (R. 165). The cartilage is "sent for chondrocyte isolation and culture in the laboratory," and then the "chondrocytes are injected into the defect and covered with a periosteal patch, which is sutured to the edge of the defect." (*Id.)*

3

"was reviewed by our doctor reviewer," it stated that it "uses [Milliman Guidelines] for decision making." Banner concluded:

> Per [Milliman Guidelines] A-0415 Autolgous [sic] Chondrocyte Implantation, Knee, Current role remains uncertain. Based on review of existing evidence, there are currently no clinical indications for this technology.

(R. 171.) Banner asserts that Milliman Guidelines A-0415 references several studies and various medical literature to conclude there is insufficient evidence to establish that ACI surgery is medically proven as effective treatment. (R. 165-67.)

Plaintiff submitted an administrative appeal pursuant to the Plan, which included another letter from Dr. Gersoff in support of the ACI surgery. (R. 184-88, 222-23.) The Plan provides that Banner will consult with a medical expert during the review of the claim. Banner selected James S. Kort, M.D., an orthopedic surgeon who works for Banner, to do the review. (R. 181, 291-96, 338-39.) It advised Dr. Kort that it had relied on the Milliman Guidelines in finding that the ACI surgery was not medically necessary. (R. 292, 294-96.)

Dr. Kort stated that he would approve the procedure. (R. 296.) He noted that he had "reviewed materials transmitted to him including a limited medical history, operative report, and an appeal by the patient and treating physician and literature submitted by both the reviewing physician and treating physician." (R. 293.) Dr. Kort further stated that while he had never performed the procedure, he had "read a number of articles regarding the procedure," attended meetings discussing it, and served as chairperson of the Connecticut State Medical Society Committee on the Medical Aspects of Sports. (*Id.*)

4

Dr. Kort then stated that "ACI is not a new procedure"; that "a great deal of laboratory and clinical research has been performed to try to determine its effectiveness, role in orthopedic management and to improve its application"; and that "[t]his research has been in the mainstream of orthopedic surgery involving highly respected orthopedic surgeons at the leading hospitals." (R. 294.) He further stated that "ACI is a respected technique and not a 'fringe' procedure" and that it "is not purely experimental in that there is a significant body of literature and opinion supporting its application and effectiveness." (*Id.*) "Review of the operative note and approximately 50 pages of criteria for the procedure by numerous insurance carriers would indicate that the patient does meet the published criteria." (*Id.*) Dr. Kort concluded: "[I]t is my opinion that the proposed procedure is reasonable and appropriate from a purely orthopedic view point." (R. 295-96.)

Banner then issued an "Appeal Notice of Denial Determination," upholding the original benefit determination and denying the request for coverage of ACI. (R.301-04.) It stated that "[the] Appeals & Grievance Committee carefully considered all the information submitted, along with the application of the Plan provisions," and that the appeal "was reviewed by a medical doctor who was involved in the initial review of this request." (R. 301.) It did not mention Dr. Kort by name or mention that Dr. Kort found ACI reasonable and appropriate.

As to the findings relevant to the determination, Banner stated that "Banner Health Plan utilizes Milliman Guidelines . . . in making decisions," and that this was "a non-covered service" under the Milliman Guidelines. (R. 301.) The same language

from the Guidelines was cited by Banner on the appeal as in the initial denial. (R. 172, 301; *see also* R. 338-39 ("Denial upheld by A&G Committee based on" the Milliman Guidelines)).

Plaintiff thereafter requested a voluntary "external review request" under the terms of the Plan. (R. 314, 320, 404-06.) The Request for External Review stated that Plaintiff disagreed with Banner's decision "because there was absolutely no orthopedic surgeon/specialist representation in any of Banner's appeal decisions." (R. 404.) Plaintiff further stated in the Request that "[t]here is a large amount of documentation provided that supports [ACI] especially in my specific case that needs to be thoroughly reviewed by an orthopedic surgeon/specialist who has expertise in this procedure." (*Id*.)

Medical Review Institute of America, Inc. ("MRI"), an independent review organization, conducted the external review of the claim. (R. 405-412.) MRI noted that the reason given to it for the previous denial by Banner was the Milliman Guidelines. (R.406.) MRI retained an unidentified board-certified orthopedic surgeon to conduct the review. (*Id*.) It upheld the denial of Banner's adverse determinations in a letter to Plaintiff dated February 20, 2015. (R. 405-12.)

MRI stated in its denial that "[i]n the performance of the review, we reviewed the medical records and documentation provided by the involved parties." (R. 405.) Its "Final External Review Decision" upheld Banner's determination because "[t]he proposed Autonomous Chondrocyte Implantation Knee is not medically necessary based on Milliman Guidelines and applicable plan language." (R. 406.)

6

The "Explanation of Findings" in MRI's letter, which may have been written by the surgeon retained by MRI to conduct the review, also stated that "[t]he proposed [ACI] of the knee is not medically necessary for this patient based on [Milliman Guidelines] and applicable plan language." (R.409). The reviewer explained that the Milliman Guidelines

> do not support the use of [ACI] [and] that "evidence is insufficient, conflicting, or poor and demonstrates an incomplete assessment of net benefit vs harm; additional research is recommended. A systematic review concluded that there is insufficient evidence to draw conclusions on the use of [ACI] for full-thickness articular cartilage defects."

(R.409-10 (quoting Milliman Guidelines)).

The reviewer then discussed the Plan criteria for a procedure to qualify as being "Medically Necessary." (R. 410.) The reviewer found that two criteria were satisfied. (*Id.*) However, the reviewer found that the "Medically Necessary" criteria requiring that the procedure be medically proven to be effective treatment of the condition was not satisfied for the requested ACI,

> as there are no well conducted randomized controlled studies [and] cohort studies in the published peer reviewed literature demonstrating the safety, efficacy, and improved long term outcomes of the procedure for full thickness cartilage defects. There are numerous Level IV studies published on the efficacy of ACI for symptomatic lesions of the patella in small series with short to midterm follow up which does not satisfy the plan language requirements of medical necessity.

(*Id.*)

The reviewer noted that several letters of appeal were provided which "identified that the patient is too young for a patellofemoral arthroplasty which claim is supported by peer reviewed literature and standards of good medical practice." (R. 410.) The reviewer acknowledged that Dr. Gersoff "identified several well accepted published peer reviewed articles . . . of improved function and outcomes following ACI. . ." and that the procedure is supported by some insurers. (*Id*.) Nonetheless, the reviewer stated that the surgery "is not medically necessary based on Milliman Guidelines and applicable plan language." (R.410-11.) The reviewer also cited several additional medical literature references in support of the decision. (R. 411.)

### III. APPLICABLE PLAN LANGUAGE

The Plan states that "[n]o benefits shall be payable under any part of the Health Plan for the following list of exclusions: . . . a service, supply or treatment not Medically Necessary, including experimental procedures." (R. 51.) The Plan defines "Medically Necessary" as:

> care and treatment that is recommended or approved by a Provider; is consistent with the Plan Participant's condition and accepted standards of good medical practice; is medically proven to be effective treatment of the condition; is not performed mainly for the convenience of the Plan Participant or Provider of medical services; is not conducted for research purposes; and is the most appropriate level of services which can be safely provided to the Plan Participant. All of these criteria must be met; merely because a Provider recommends or approves certain care does not mean that it is Medically Necessary or that it is covered under the Plan.

(R. 109.)

8

The Plan also provides that "[n]o benefits shall be payable under any part of any Health Plan for . . . a service, supply or treatment not Medical Necessary, including experimental procedures"; or "[a]ny Experimental, Unproven, or Investigational procedures. . . ." (R. 51-52.) It further states:

> Specific sources of information will be reviewed by the Health Plan in its determination of whether a procedure, drug or device is Experimental, Unproven, or Investigational. The following are some but not all of the sources the Health Plan will include as part of its review process:
>
> a. This SPD;
>
> b. Any and all consent documents you sign;
>
> c. Any protocols pursuant to which the treatment, procedure, drug, or device is to be delivered;
>
> d. Medical records; and
>
> e. Authoritative medical literature.

(R. 52.) Both parties agree that this language is applicable to the claim at issue.

## IV. ANALYSIS

### A. Standard of Review

A "denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). There is no dispute in this case that the disability policy gives discretion to Banner to administer the Plan, construe and interpret the terms of the Plan, and to determine eligibility for benefits. (R. 11-12.) Therefore, this Court must apply the arbitrary and

9

capricious standard of review. *Van Steen v. Life Ins. Co. of N. Am.*, 878 F.3d 994, 997 (10th Cir. 2018).

Under the arbitrary and capricious the court must uphold the determination "so long as it was made on a reasoned basis and supported by substantial evidence." *Id.* "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker." *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir. 2002) (cleaned up). In determining whether the evidence in support of the administrator's decision is substantial, the court must take into account record evidence that detracts from its weight. *Id.*

"Indicia of arbitrary and capricious decisions include lack of substantial evidence, mistake of law, bad faith, and conflict of interest by the fiduciary." *Caldwell*, 287 F.3d at 1282. The court also gives less deference if a plan administrator fails to examine relevant evidence. *Id.*; *see also Mason v. Reliance Standard Life Ins. Co.*, No. 14-CV-01415-MSK-NYW, 2015 WL 5719648, at *7 (D. Colo. Sept. 30, 2015).

Here, it is undisputed that Banner was operating under a conflict of interest in deciding the claim. Ms. Weiss has shown that Banner both sponsors and administers the Plan. (R. 3, 11, 32, 70, 101-102, 110.) The plan is self-funded "meaning the benefits are paid from the general assets of Banner." (R. 4, 102.) The Supreme Court has noted that "[i]n such a circumstance, every dollar provided in benefits is a dollar spent by . . . the employer; and every dollar saved . . . is a dollar in [the employer's] pocket." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 112

(2008) (internal quotation marks omitted); *see also Caldwell*, 287 F.3d at 1283 (inherent conflict existed because the administrator was both the administrator and insurer). This means that the deference under the arbitrary and capricious standard of review must be dialed back, *Weber v. GE Group Life Assur. Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008), and the conflict must be weighed as a factor in determining whether the decision was arbitrary and capricious. *Glenn*, 554 U.S. at 112.

The Tenth Circuit uses "a sliding scale approach where the reviewing court will always apply an arbitrary and capricious standard, but will decrease the level of deference given in proportion to the seriousness of the conflict." *Weber*, 541 F.3d at 1010 (cleaned up). "The importance of a conflict of interest 'is proportionate to the likelihood that the conflict affected the benefits decision.'" *Van Steen*, 878 F.3d at 997 (quoting *Graham v. Hartford Life & Accident Ins. Co.*, 589 F.3d 1345, 1358 (10th Cir. 2009)).

### B. The Merits

Plaintiff argues that Banner improperly used the Milliman Guidelines in arriving at its decision. She also argues that Banner failed to provide Dr. Kort's report to the external reviewer, thus constituting a procedural irregularity that tainted the decisionmaking process. Even applying the somewhat more stringent standard of review discussed above, the Court rejects both arguments.

The Court's analysis must focus on the administrator's interpretation of the plan itself, in this case the determination that the ACI surgery was not "Medically Necessary." *See Egert v. Connecticut Gen. Life Ins. Co.*, 900 F.2d 1032, 1036-37 (7th

11

Cir. 1990). The plan language is critical to the analysis because it allows an employee to "determine exactly what his rights and obligations are under the plan." *Cirulis v. UNUM Corp.*, 321 F.3d 1010, 1013 (10th Cir. 2003) (internal quotation marks omitted). Consequently, "the imposition of new conditions that do not appear on the face of a plan constitutes arbitrary and capricious conduct." *Id.*

The Plan in this case does not specifically refer to the Milliman Guidelines as a basis for determining medical necessity or as a source the Plan will use as part of its review process. The list of sources it states that it will consider is, however, nonexclusive. (R. 52). And the Plan grants Banner discretionary authority to determine whether treatment is "Medically Necessary." (R. 12.) Courts have long recognized that an administrator may establish and rely on procedures or guidelines so long as they reasonably interpret the plan. *Egert*, 900 F.2d at 1036; *see also Smith v. Health Servs. of Coshocton,* 314 F. App'x 848, 859 (6th Cir. 2009) (collecting cases); *E.R. v. UnitedHealthCare Ins. Co.,* 248 F. Supp. 3d 348, 362 (D. Conn. 2017). The guidelines cannot, however, "change the definition of a term within a plan or effectively add requirements to that definition." *Id.*; *see also Florence Nightingale Nursing Serv. v. Blue Cross/Blue Shield of Ala.*, 41 F.3d 1476, 1483-84 (11th Cir. 1995).[4]

---

[4] While the above cases discuss internal guidelines or policies adopted by and relied on by the plan sponsor or administrator, the rationale of those cases is equally applicable to external guidelines such as the Milliman Guidelines. *Cf. Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 997, 1003 (10th Cir. 2004) (in assessing whether denial of benefits was arbitrary and capricious, one factor to be considered is whether the denial is "reasonable in light of any external standards"), *abrogated on other grounds by Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105.

Here, Plaintiff has not shown that that it is unreasonable for Banner to rely on the Milliman Guidelines, or that the Milliman Guidelines unreasonably interpret the Plan or its definition of "Medically Necessary." Banner asserts, and this Court agrees, that reliance on the Milliman Guidelines is reasonable because it provides "[e]vidence-based criteria for determining the medical necessity of established and emerging procedures and diagnostic tests that usually take place in ambulatory care or outpatient settings." Milliman Care Guidelines for Ambulatory Care, https://www.mcg.com/care-guidelines/ambulatory-care; *see also Norfolk Cnty. Retirement Sys. v. Cmty. Health Sys., Inc.*, 877 F.3d 687, 690 (6th Cir. 2017) (noting that "[t]o determine whether a person needs inpatient or outpatient care, most hospitals use" either "the InterQual Criteria or the Milliman Care Guidelines," and that the Milliman Guidelines "were written and reviewed by over 100 doctors, reference 15,000 medical sources," and are used by about 1000 hospitals); *Becker v. Chrysler LLC Health Care Benefits Plan*, 691 F.3d 879, 887 n.37 (7th Cir. 2012) ("the Plan asserts—and Ms. Becker does not deny—that [the Milliman Guidelines] is a nationally recognized clinical decision support tool"). As one court noted, the administrator "must determine medical necessity in determining coverage and, therefore, must use some criteria (e.g., Milliman Care Guidelines or the expertise of a medical professional) in making a reasonable decision in that regard." *Summersgill v. E.I. Dupont de Nemours & Co.*, No. 13-cv-10279, 2016 WL 94247, at *9 (D. Mass. Jan. 6, 2016).

Reliance upon the Milliman Guidelines was particularly appropriate in this case in light of the plan language specifying that "[n]o benefits shall be payable . . . for . . . a service, supply or treatment not Medically Necessary, including . . . "[a]ny Experimental, Unproven, or Investigational procedures. . . ." (R. 51-52.) The plan does not define "Unproven," but it does state that a procedure is "Experimental and Investigational" if: (1) "the Claims Administrator in its sole discretion determines that there exists reliable evidence . . . that further studies or clinical trials are necessary to determine . . . its efficacy or its efficacy as compared with a standard means of reliable treatment or diagnosis" or (2) "the claims administrator in its sole discretion determines that based on prevailing medical evidence the . . . procedure is Experimental or Investigative." (R. 107-08.) Notably, these definitions do not address the particular needs of the patient, but address more generally whether a particular procedure is "Experimental or Investigative."

Here, the plan administrator, exercising its discretion, effectively determined that the Milliman Guidelines were "reliable evidence" that ACI is "Experimental" within the meaning of the plan language. In contrast, in the decision on which Ms. Weiss most heavily relies, *H.N. v. Regence Blue Shield*, 15-CV-1374 RAJ, 2016 WL 7426496 (W.D. Wash. Dec. 23, 2016), the Milliman Guidelines were not used to assess the general question of whether a particular treatment was "experimental" or "unproven," but to assess the appropriateness of a particular treatment for a particular patient. *See id.* at *4 (reviewer found that "Patient does not meet any of the [Milliman Guidelines] for re-admission to [mental health inpatient] for a child or

14

adolescent"). That individualized question is much more likely to be one that a reviewer or provider with more complete knowledge of the patient's circumstances will be able to answer, where the Guidelines are more likely to be a reliable source when it comes to the broader question of whether a treatment in general meets the "accepted standards of good medical practice [and] is medically proven to be effective treatment of the condition." (R. 109.) Since the decision here was based on this latter consideration, its reliance on the Milliman Guidelines was not improper.

Ms. Weiss does not, in fact, dispute that the Milliman Guidelines constitute "reliable evidence" for purposes of addressing the "Experimental or Investigative" question. Indeed, she acknowledges that she is not asserting that use of medical guidelines like the Milliman Guidelines is unreasonable *per se.* Reply Br. at 4 (Doc. 56). Instead, Ms. Weiss contends that Banner unreasonably used the Milliman Guidelines as the *sole* criteria in determining medical necessity without advising the plan participants of this.

The record shows, however, that the Milliman Guidelines were not the sole criteria in determining medical necessity.[5] Banner stated in both the initial denial of Plaintiff's claim and the appeal that the claim was reviewed by a medical doctor, and in the appeal that the "Appeals and Grievance Committee carefully considered all the information submitted, along with the application of the Plan provisions."

---

[5] This also distinguishes the instant case from the decision in *H.N. v. Regence Blue Shield*. The court in *Regence* observed that "[t]he [Milliman Guidelines] might be a helpful tool but were not intended to operate as a sole basis for denying treatment." 2016 WL 7426496, at *4. In addition, as Banner points out, the court's review in *Regence* was *de novo*. *Id.* at *1.

(R. 172, 301.) Moreover, it referred the claim to an external reviewer, who conducted a thorough review of the claim. The reviewer stated in the decision upholding Banner's adverse determinations that it reviewed the medical records and documentation provided by the parties, the letters of appeal, the peer reviewed literature that supported the claim, and the fact that it was supported by some insurers. (R. 405-11.) The Court finds from this that the reviewer considered and credited Plaintiff's relevant evidence.

The external reviewer found that the claim was not medically necessary based on the fact that were no well-conducted randomized controlled studies "in the published peer review literature demonstrating the safety, efficacy, and improved long term outcomes of the procedure." (R. 410.) The reviewer further noted that "[t]here are numerous Level IV studies published on the efficacy of ACI for symptomatic lesions of the patella in small series with short to mid term follow up which does not satisfy the plan language requirements of medical necessity." (*Id.*) The reviewer also cited six other sources of medical literature in support of the decision, in addition to the Milliman Guidelines. (R. 411.) Thus, the reviewer's conclusion that the procedure was not medically necessary was based on the applicable plan language, the Milliman Guidelines, and other literature in the field. (R. 406, 409, 410-11.)

The external reviewer thus did not rely solely on the Milliman Guidelines, and provided a reasoned basis for upholding the denial of the claim. The administrator's decision "'need not be the only logical one, nor even the best one.'" *Finley v. Hewlett-*

*Packard Co. Emp. Benefits Org. Income Prot. Plan*, 379 F.3d 1168, 1176 (10th Cir. 2004) (quoting *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999)). Instead, the decision only need be grounded in a reasonable basis. *Id.* This Court holds that Banner's decision was grounded in a reasonable basis.

This Court also rejects Ms. Weiss's argument that Banner did not provide Dr. Kort's opinion to the external reviewer. The reviewer's letter to Plaintiff stated that the information provided to the reviewer included a "Letter, undated, 3 pages" followed by "Appeals and Grievance Reviewer Attestation 11/12/14, 1 page." (R. 406, 408.) Dr. Kort's letter was three pages and his attestation is dated November 12, 2014. (*See* R. 394-97.) Banner also notes that the records provided to the external reviewer are located in the Administrative Record at 325-404, and contain Dr. Kort's letter and attestation. The Court finds from this that Dr. Kort's letter was provided to the external reviewer.[6]

Finally, although this Court has considered the conflict of interest as a factor, it does not alter the analysis. Banner granted Plaintiff an external review by an independent reviewer, who conducted a reasoned analysis of the claim and reached the same result as Banner. *See Green v. Life Ins. Co. of N. Am.,* 750 F. App'x 676, 679-80 (10th Cir. 2018) (finding administrator properly dealt with conflict of interest when it referred the case to independent peer reviewers). This Court has taken a "hard look" at the evidence and arguments presented to the plan administrator to

---

[6] Dr. Kort's opinion cautioned that the ACI procedure has "variable results and significant incidents of secondary procedures," and that Ms. Weiss needed to be informed of this. (R. 294-96.)

ensure that the decision was a reasoned application of the plan to the particular case untainted by the conflict of interest, *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1168 (10th Cir. 2006), and finds that it was.

## IV. CONCLUSION

Based on the foregoing, it is

ORDERED that the Joint Motion for Determination (Doc. No. 57) is **GRANTED** consistent with this Order. It is

FURTHER ORDERED that Banner's decision is **UPHELD**. Judgment shall enter in favor of Banner Health and against Plaintiff.

Dated: September 19, 2019

BY THE COURT:

_____
Daniel D. Domenico
United States District Judge